Syllabus.

# Richmond.

JEREMY IMPROVEMENT COMPANY v. COMMONWEALTH.

January 24, 1907.

1. BILLS OF EXCEPTION—*How Evidence Certified.*—Upon overruling a
   motion for a new trial on the ground that the verdict is contrary
   to the evidence the usual and better practice is for the evidence
   to be set out in the bill of exception before the signature of the
   judge is attached, but it is not fatal error if the certificate of the
   judge precedes the evidence where the evidence is completely
   identified, and, is in effect, made a part of the bill of exception.
2. PRESENTMENT—*Finding of Grand Jury—Record Evidence.*—While the
   record must show the finding of an indictment as a true bill by
   the grand jury it is not so with respect to a presentment for a
   misdemeanor. It is sufficient in such case to set forth the sub-
   stance of the finding in the order of the court.
3. CONSTITUTIONAL LAW—*Taking Private Property—Abatement of Nui-
   sance.*—The abatement of a nuisance because injurious to the
   public health comes under the police power of the state, and is
   not a taking of private property for public use, for which com-
   pensation must be made, within the meaning of the constitution.
4. PUBLIC NUISANCE—*Stagnant Water—Allegation and Proof—Proxi-
   mate Cause.*—To maintain a prosecution for a public nuisance
   occasioned by the maintenance of a dam, whereby the waters of a
   creek have been permitted to overflow adjacent lands and be-
   come stagnant, and the air impure, it is necessary to allege and
   prove that the nuisance charged affected a public highway, or
   some other place in which the public have such special interest.
   Furthermore, the thing or act which is the ground of prosecution
   must be shown to be the direct and proximate cause of the nui-
   sance. It is no defense, however, that the acts of others over
   whom the defendant had no control contributed to the nuisance,
   if there would be a nuisance without such contribution.
5. INSTRUCTIONS—*Evidence to Support.*—It is an error to give an instruc-
   tion when there is no evidence to support it.
6. PUBLIC NUISANCE—*Milldam—Evidence.*—A milldam lawfully erected
   is not *prima facie* a nuisance, and upon the trial of an indict-
   ment for a nuisance resulting therefrom the mere proof of the
   existence of the dam imposes no burden on the owner thereof.

---

Statement.

---

7. PUBLIC NUISANCE—*Case at Bar—Milldam—Insufficient Evidence.*—
The presentment in this cause charging the defendant with the
maintenance of a dam across a creek creating conditions whereby
the air became corrupted and infected, causing malignant chills,
fevers and other loathsome diseases to the injury of the public
is not sustained by the evidence. Nor does the evidence show
that any public highway or other thing of special public interest
is affected by the alleged public nuisance, nor that the dam is
the proximate cause of the alleged nuisance or is responsible for
the conditions complained of.

8. PUBLIC NUISANCE—*Milldam—Abatement—Evidence.*—Very clear and
convincing proof is required to sustain a prosecution for a nui-
sance where the result is to destroy valuable rights and property
held under specific authority of law; and, even in cases where
a less degree of proof is required, the rule is that if there is
more than one cause to which an injury may be attributable and
it is just as probable that it was caused by one as the other, the
party sought to be charged because responsible for one of them,
must be relieved.

Error to a judgment of the Circuit Court of Charlotte county
on a presentment for a public nuisance. Judgment for the Com-
monwealth. Defendant assigns error.

*Reversed.*

The record of the finding of the presentment in the trial
court is as follows:

"Be it remembered, that heretofore, to-wit: at a Circuit Court
held for Charlotte county, at the courthouse of said county,
on Wednesday, the 5th day of July, 1905, the following com-
plaint was filed and order entered thereupon:

"To the Hon. George J. Hundley, Judge of Charlotte Cir-
cuit Court:

"We, the undersigned citizens of Charlotte county, complain
of the public and common nuisance existing in the said county
of Charlotte, and by which we, with others, are and have been

grievously damaged in our persons and property, to-wit: The existence of a dam in the stream known as Roanoke creek, or Little Roanoke river, which dam is located about three-quarters of a mile above the mill of Jeremy Improvement Company, in said county of Charlotte, on said stream. We pray the honorable court to summons a special grand jury to specially investigate the said nuisance and this complaint; and that proceedings be had in the premises in accordance with the provisions of an act of the Assembly approved December 30, 1903—an act to provide for abating public nuisances, and to repeal an act approved March 5, 1888, in relation thereto.

> "HUNTER M. GREEN,
> "MARTHA W. GAINES,
> "JAS. A. GAINES,
> "JNO. H. FARMER,
> "P. N. MORGAN.

"ORDER OF THE COURT.

"Upon the complaint of Hunter M. Green, Martha W. Gaines, Jas. A. Gaines, Jno. H. Farmer and P. N. Morgan, in writing, setting forth the existence of a public or common nuisance in the county of Charlotte, by which they with others are and have been grievously damaged in their persons and property, to-wit: The existence of a dam in the stream known as Roanoke creek, or Little Roanoke river, which dam is located about three-quarters of a mile above the mill of Jeremy Improvement Company, in said county of Charlotte, on said stream, the court doth order that a special grand jury be summoned in the mode provided by law to the next term of this court to specially investigate the said complaint.

"And at another day, to-wit: At a Circuit Court held for Charlotte county, at the courthouse of said county, on Monday, the 4th day of September, 1905, W. G. Cabaniss, foreman, L.

H. Hamersley, James Anderson, Isaac M. Smith, J. W. Gil-christ, J. H. Hankins and J. W. Myers, who were empaneled and sworn to specially investigate the complaint of Hunter M. Green, *et al.*, setting forth the existence of a public or common nuisance in the county of Charlotte, by which they with others have been grievously damaged in their persons and property, to-wit, the existence of a dam in the stream known· as Roanoke creek, or Little Roanoke river, which dam is located about three-quarters of a mile above the mill of Jeremy Improvement Company, in said county of Charlotte, on said stream, retired to their room to consult of their presentment, and after some time returned into court with the following:

"The jurors of the Commonwealth of Virginia in and for the body of the county of Charlotte, constituting a special grand jury summoned in the mode prescribed by law to investigate a complaint made to the court by more than five citizens of the said county, setting forth the existence of a public or common nuisance in said county of Charlotte, and now attending the said Circuit Court for the said county, being satisfied that the nuisance complained of is a public or common nuisance, on their oaths present that Jeremy Improvement Company, a corporation chartered by and under the laws of Virginia for this, to-wit, that there is in existence a certain dam in the stream known as Roanoke creek, or Little Roanoke river, extending across the channel thereof, which dam is in the said county of Charlotte and upon the lands of the said Jeremy Improvement Company about three-fourths of a mile, be the same more or less, above the mill upon the lands of the said Jeremy Improvement Company, situated at Saxe, in said county, about one-half of a mile, more or less, from the public·highway or public road leading from Mossingford to the railroad station at Saxe, on the Southern Railway Company, in said county, and about one mile from another public highway or public road leading from Mossingford to Reeses, in said county; also about one mile, more

or less, from the Experimental Farm belonging to the state of Virginia, situated at Saxe, a railway station on the Southern Railway Company, and in the said county, which dam the jurors aforesaid find upon a full investigation to be a public or common nuisance of a public nature, which said dam said Jeremy Improvement Company unlawfully and injuriously permitted to remain and continue in the said creek since the first day of January, 1903, and on said first day of January, 1903, and on divers other days before and since, unlawfully and injuriously has permitted the waters of the Roanoke creek and mill-pond to overflow the adjacent land as well of others as his own, and also the public highway leading from Mossingford to Reeses, in said county, by reason whereof the land so overflowed was rendered and kept marshy and filled and covered with noxious weeds and putrid vegetation whereby the air became corrupted and infected, causing malignant fevers, chills and other loathsome sickness and diseases, to the great damage and common nuisance, not only of the neighboring citizens, but of all the good citizens of the Commonwealth passing along and using said highways or public roads and said Southern railway, and all of the good citizens of the Commonwealth visiting the said Experimental Farm, and also to the great damage, trouble and inconvenience of all the good citizens of the Commonwealth passing along and using the said highway or public road leading from Mossingford to Reeses. And the jurors aforesaid further find that the said Jeremy Improvement Company did not create or cause said nuisance, but has permitted, and does permit its continuance; and that said Jeremy Improvement Company is responsible therefor, according to an act of the General Assembly of Virginia in such case made and provided, and against the peace and dignity of the Commonwealth of Virginia.

"And thereupon the special grand jury was adjourned."

*McGuire, Riely & Bryan, S. A. Anderson* and *W. C. Carrington,* for the plaintiff in error.

*Attorney-General Wm. A. Anderson* and *Wm. H. Mann,* for the defendant in error.

Harrison, J., delivered the opinion of the Court.

It appears that the plaintiff in error is the owner of a mill situated on Roanoke creek, in Charlotte county, at Saxe, a station on the Southern railway.   About three-quarters of a mile above the mill a dam across the channel of the creek is maintained for the purpose of furnishing water power to the mill.   This dam was established, in pursuance of then existing statutes, in the year 1794.   One acre of land on the opposite side of the creek was condemned for the construction of an abutment of the dam.   The original dam was seventy-five to one hundred yards further down the stream than the present dam, but there is nothing in the record to show that its present location is not within the limits of the one acre which was condemned for its original erection.   Its present position was fixed as early as 1876.

This prosecution to abate and remove the dam mentioned, as a public nuisance, was instituted under section 1729a of the Virginia Code (1904).   It had its origin in the complaint of five citizens of Charlotte county to the judge of the Circuit Court of that county.   The grand jury summoned in response to this complaint brought in a presentment against the plaintiff in error, charging that the maintenance of the dam was a public nuisance.   It is alleged that the dam is about one mile from one public highway and about half a mile from another, and about one mile from the "Experimental Farm" belonging to the state of Virginia.   It is further alleged that the plaintiff in error has unlawfully and injudiously permitted the waters of the Roanoke creek and mill-pond to overflow the adjacent

land of others as well as his own, and also the public highway, by reason whereof the land so overflowed was rendered and kept marshy and filled and covered with noxious weeds and putrid vegetation, whereby the air became corrupted and infected, causing malignant fevers, chills and other loathsome sickness and diseases, to the great damage and common nuisance, not only of the neighboring citizens, but of all the good citizens of the Commonwealth passing along and using said highways or public roads and said Southern railway, and all of the good citizens of the Commonwealth visiting the said Experimental Farm; and also to the great damage, trouble and inconvenience of all the good citizens of the Commonwealth passing along and using the said highway or public road leading from Mossingford to Reeses.

There was a demurrer to this presentment, which was overruled by the Circuit Court. This action of the Circuit Court was assigned as error, but the objection was waived at the bar of this court.

The trial resulted in a verdict against the accused, and a judgment thereon imposing a fine of $25.00, and requiring the sheriff of the county to forthwith cause the dam of the plaintiff in error to be cut down and removed from Roanoke creek. A motion in arrest of judgment, and to set aside the verdict as contrary to the law and the evidence, were successively made and overruled; and thereupon the case was brought here for review.

The defendant in error raises the preliminary question that the evidence adduced cannot be considered because not made a part of the record by a proper bill of exception.

This contention is not tenable. Bill of exception No. 9 sets forth, under the seal and signature of the judge, the action of the court in refusing to set aside the verdict. Immediately following is this certificate, which is also signed by the judge under seal: "And the court certifies that the following stenographic report of the evidence, made by T. E. Owen, bearing

date the 10th day of November, 1905, to which report the affidavit of said Owen is appended, is all the evidence, including documentary evidence therein referred to, including the deed to the Jeremy Improvement Company and the writ of *ad quod damnum,* introduced upon the trial of this case, which report is adopted here and made a part of the record." Following this certificate is the complete evidence, with the affidavit of the notary mentioned by the court attached.

It is usual, and the better practice, for the evidence to be set out in the bill of exception before the signature of the judge is attached, for thereby all question of identification of the evidence is removed; but the failure to do this is not fatal, where, as in the case before us, the certification and identification of the evidence by the court is complete, and it is, as here, in effect made part of the bill of exception. *Leftwich* v. *Licance,* 4 Wall. 187, 18 L. Ed. 388.

The point is made by the plaintiff in error that the record does not show that the finding of the grand jury with respect to the presentment was recorded in the Circuit Court, and therefore it does not appear that it was a true bill; it being contended that since *Cawood's Case,* 2 Va. Cas. 527, it has been held that the record in a criminal case must show affirmatively that the indictment was found as a true bill by the grand jury which originated it; that this omission cannot be supplied by presumption or by inference from other recitals in the record; and that the failure to show this by the record will invalidate all subsequent proceedings in the case.

This is true as to an indictment, but it has never been so held with respect to a presentment such as we have in the case at bar. On the contrary, the practice is, when such a presentment is returned, to set forth the substance of the finding in the order of the court, which has always been deemed sufficient. In the case before us the presentment by the grand jury has been set forth *in extenso* in the order of the court, entered of

record, and made a part thereof. This is all that is required in such a case.

It is, with hesitation, suggested in the petition for a writ of error that section 1729a of the code, under which this proceeding was instituted, is in conflict with section 58 of the Virginia constitution, which forbids the taking of private property for public uses without just compensation.

This is a criminal prosecution against the defendant as a wrongdoer for creating and maintaining an alleged public nuisance, which is declared to be injurious to the public health. The abatement of such a nuisance for the public safety comes under the police power of the State, and is not a taking of private property for a public use in the sense contemplated by the constitution, for which compensation must be allowed.

The evidence shows that the country claimed to be injuriously affected by the existence of the dam extends from the latter a distance of seven miles above. There is, however, no evidence that the dam caused refluent or back-water for that distance; on the contrary, the weight of evidence shows that the dam does not back the water for a greater distance than seven hundred yards, and all the witnesses who speak upon the point seem to agree that there is no stagnant water in the stream itself, there being a current extending to the dam. It appears that the country above the dam, through which Roanoke creek runs, is naturally low and subject to overflow, resulting in a marshy condition of the adjacent land that renders it practically unfit for cultivation. It also appears that along almost the entire course of the stream about which there is any testimony, varying in extent at different points, there are ponds or pools of water formed in low places from the natural and periodical overflows, which at certain seasons have no outlet and become stagnant. Most of these pools exist in what was the old bed of Roanoke creek, which is lower than the present bed. This old bed was left as the result of a change in the course of the stream made by adjoining landowners between the years 1855

and 1858. It was the theory of the Commonwealth, and its evidence was directed to show, that the dam so obstructed the flow of water in the stream as to cause the constant deposit of sand in the bed, thus gradually lessening the height of the enclosing banks, with the result that overflows upon the adjacent lands were more frequent. But the evidence abundantly shows that many obstructions, other than the dam, existed in the stream and impeded its flow.

In the case of *Com'th* v. *Webb*, 6 Rand. 726, which was a criminal prosecution for a nuisance caused by a milldam which produced stagnation in the water of the stream itself, this court held "that to constitute a public nuisance the act done, or duty omitted, must affect injuriously some thing or right in which the community, as a body politic, have a common interest, and the facts producing this injury and connecting it with such public right or interest must be alleged and proved." In that case the information contained two counts, the first concluding "to the great damage and common nuisance of all the good citizens of this Commonwealth, not only those residing, but also going, returning, passing and repassing by the neighborhood of the said point"; and the second count concluding "to the common nuisance of all the good citizens of the Commonwealth." Upon a demurrer to the information the court held these averments insufficient, saying that it was necessary to allege and prove that the nuisance charged affected "a public highway or some other place in which the public have such special interest."

It is well settled that the thing or act which is the ground of the prosecution must be shown to be the direct and proximate cause of the nuisance. *State* v. *Rankin,* 3 S. C. 438, 16 Am. Rep. 737; *State* v. *Holman,* 104 N. C. 861, 10 S. E. 758; *Missouri* v. *Illinois,* 200 U. S. 496, 50 L. Ed. 572, 26 Sup. Ct. 268.

The last-named case was an application by the state of Missouri to the Supreme Court for an injunction restraining the state of Illinois from permitting the city of Chicago to empty

its sewage into the Mississippi river. In dismissing the bill the court holds that if the alleged facts as to such pollution are not fully proved, and it also appears that such pollution might result from the discharge of sewage by cities of the complainant state into the same river, the bill should be dismissed.

It is no defense, however, that the nuisance complained of is contributed to by the acts of others over whom the defendant has no control, if there should be a nuisance without such contribution. *State* v. *Holman,* 104 N. C. 861, *supra.*

Bill of exception No. 1 is to the action of the court in giving an instruction for the plaintiff, which told the jury, among other things, that if they believed, beyond a reasonable doubt, that the dam in question, for two or three miles above, produced such conditions as caused the people passing to and fro along the public highways in the neighborhood of said creek, dam and mill to become affected with and have malarial diseases, such as chills, fevers and diseases of a like nature, then they must find for the Commonwealth.

This instruction is erroneous for the reason that there is no evidence in the record tending to show that the health of any one traveling on the public highways was affected by the conditions alleged to have been caused by the existence of the dam. No effort seems to have been made by the Commonwealth to show that the public on the highways suffered from the conditions complained of. The evidence for the Commonwealth was limited to the effect upon the health of persons living in the neighborhood. This court has repeatedly held that instructions must be based upon evidence, and that it is error to give instructions not warranted by the evidence. *Va., &c., Co.* v. *Harris,* 103 Va. 708, 717, 49 S. E. 991; *Rocky Mount Trust Co.* v. *Price,* 103 Va. 298, 49 S. E. 73.

Bill of exception No. 2 is to the action of the court in refusing to give the following instruction asked for by the defendant: "The court further instructs the jury that a milldam lawfully established is not *prima facie* a nuisance."

This instruction should have been given. There are structures as to which the law does raise a *prima facie* presumption that they are nuisances, and thus places upon those responsible the burden of showing to the contrary; but such is not the case with a milldam lawfully established.

Section 3868, Virginia Code (1904), in defining what obstructions in a water course shall be deemed a nuisance, expressly excepts a dam used to "work a mill, manufactory, or other machine or engine useful to the public, and is allowed by law or order of court."

The defendant was, therefore, entitled to have the jury told that the mere maintenance of a dam upon its property, erected in accordance with law, created no presumption against it, and no burden to be overcome by it. Proof of the existence of such a dam did not relieve the Commonwealth of the obligation to show a nuisance in fact.

Passing over other assignments of error not likely to arise on another trial, or practically disposed of in dealing with other questions, we come now to consider whether or not the evidence supports the verdict.

The presentment charges that on account of the conditions created by the dam "the air became corrupted and infected, causing malignant fevers, chills and other loathsome diseases," resulting, as alleged, in injury, etc. It is not claimed that the alleged accumulation of stagnant water along the stream produces disagreeable smells, or is otherwise offensive to the senses, but the single ground of complaint is the dissemination of the diseases named, by a corruption of the air. It appears from the expert evidence introduced on behalf of the Commonwealth that this is not a fact. On the contrary it is shown that the pollution of the atmosphere has nothing to do with the generation of the diseases mentioned, but that according to the universally accepted theory such diseases are due to the bite of the mosquito, which innoculates the victim with a poison carried in its system. This was not alleged in the presentment, and the

presence of the poisonous mosquito in the locality seems to rest upon the presumption arising from the expert statement that stagnant water generally breeds mosquitoes.  As already seen, the evidence fails to show that any highway or other thing of special public interest is affected by the alleged nuisance.  The only claim in this connection is as to two public roads and our state institution, all more or less remote from the dam.  The evidence is silent as to how the public comfort and convenience are affected in the use of these public utilities.

The greatest difficulty, however, in the way of sustaining the judgment complained of is that the evidence fails to show that the dam is the direct and proximate cause of the alleged nuisance, or that it is responsible for the conditions which, it is charged, produced the nuisance complained of.  As already stated, there is no stagnant water in the stream itself; but the trouble arises, it is said, from the nearby stagnant pools of water that exist throughout the course of the stream.  These pools are formed for the most part in what was once the bed of the creek, left when the channel of the stream was changed many years ago.  The dam cannot be charged with responsibility for this condition.  Even if the dam alone were the cause of the frequent overflows, which is not established, it is not responsible for the low places that collect and permit the stagnation of the water.  These conditions can be as easily, if not more readily, accounted for by the numerous other obstructions shown to be in the stream as by the dam.

We are of opinion that the evidence in this case, which has been very briefly reviewed, fails to show that the dam is the proximate cause of the diseases complained of, or that it, and not other facts and conditions, is responsible for the alleged nuisance which the Commonwealth has sought to abate.  It requires very clear and convincing proof to sustain a prosecution like this, where the result is to destroy valuable rights and property held, as this is, under specific authority of law.  In a number of cases, and of a class not requiring the degree of proof

that is essential here, this court has said that the evidence must show more than a probability of liability; and, if it is as consistent with exemption as with responsibility, or, as otherwise stated, if there is more than one cause to which an alleged ground of complaint may be due, and it is just as probable that one is as chargeable as the other, in either case the party sought to be charged must be relieved. *N. & W. Ry. Co.* v. *Pool,* 100 Va. 148, 40 S. E. 627; *Consumers' Ice Co.* v. *Doyle,* 102 Va. 399, 46 S. E. 390. This doctrine is particularly pertinent to the facts of this case.

For these reasons the judgment of the Circuit Court must be reversed, the verdict of the jury set aside, and the case remanded for a new trial not in conflict with this opinion.

*Reversed.*