# Staunton

NARROWS GROCERY COMPANY, INC. v. R. H. BAILEY AND THE
AETNA CASUALTY AND SURETY COMPANY.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Gregory
and Browning, JJ.

The opinion states the case.

*James D. Johnston* and *Williams & Farrier,* for the plaintiff in error.

*J. L. Dillow* and *W. B. Snidow,* for the defendants in error.

CAMPBELL, C. J., delivered the opinion of the court.

The defendants in error have moved this court to dismiss this writ of error, granted by one of its justices, and in the petition they allege six grounds to sustain the motion. The first five grounds are so palpably without any merit that we deem it unnecessary to enter upon a discussion of them. The sixth ground relied upon is that the purported evidence is not properly certified by the trial judge.

Bill of Exception No. 1, which was signed by the trial judge within the time prescribed by the statute, reads as follows:

"Be it remembered that, after the jury was sworn to try the issue joined in this cause, the plaintiff to prove and maintain the said issue on its part, introduced the evidence as transcribed by the court reporter, L. D. Wilmore, and shown on pages 1 to 13 inclusive in the said evidence so transcribed, and filed as part of this Bill of Exception.

"And the defendant to prove and maintain the said issue on his part, offered to introduce and did introduce the following evidence, as transcribed by said court re-

porter, and embodied therein, beginning at the bottom of page 13, and extending to the top of page 33, and the plaintiff, to further maintain the issue on its behalf, introduced in rebuttal the evidence as shown in the report aforesaid, on pages 33 to 38 inclusive, as transcribed by said L. D. Wilmore, and made part of this Bill of Exception."

Counsel for defendants rely upon *Blackwood Coal Co. v. James,* 107 Va. 656, 60 S. E. 90, 92; *Turner v. Smith,* 143 Va. 206, 129 S. E. 367; and *Pereira v. Moon,* 146 Va. 225, 135 S. E. 672, to sustain their contention.

In the *Blackwood Coal Company Case,* it appears that the trial court had merely signed a skeleton bill of exception, without in any way identifying the evidence, and had directed the clerk to insert "all the evidence introduced by both plaintiff and defendant as appears from stenographic report of the evidence." This court held there was an entire lack of identification of the evidence, and in affirming the judgment, said: "It is settled practice that the evidence is not a part of the record unless made so by a proper bill of exception. If the evidence is only vouched for by the clerk, it cannot be considered by this court."

In *Turner v. Smith, supra,* the record disclosed that the purported bill of exception was never signed by the trial judge, but that the evidence was certified by the stenographer who transcribed the same.

In the *Pereira Case,* the evidence was not in any way authenticated.

This court has repeatedly held that the making of a bill of exception is a judicial act and cannot be delegated. It is essential to the validity of the bill of exception that the trial court must, by proper authentication, identify the evidence adduced at the trial. *West v. Richmond Ry., etc., Co.,* 102 Va. 339, 46 S. E. 330; *Jeremy Improvement Co. v. Commonwealth,* 106 Va. 482, 56 S. E. 224, and cases cited.

In the case at bar it clearly appears that the trial

court, at the time of the signing of the bill of exception, had before it the evidence introduced both by the plaintiff and the defendants. The court's reference to the paging of the transcript sufficiently earmarked the evidence "so transcribed and filed" as to make it a part of the record.

The motion to dismiss will be overruled.

The facts are as follows: Plaintiff was engaged in the wholesale grocery business at Narrows, Virginia. Floyd W. Gearheart and his son, N. D. Gearheart, during the year 1928, conducted a retail store in Narrows, under the firm name and style of F. W. Gearheart & Son. The firm, on sundry occasions, purchased from plaintiff goods and merchandise amounting to the sum of $907.08, and in payment gave to plaintiff a series of notes maturing weekly. Gearheart and Son defaulted in the payment of the notes and they were placed in the hands of two justices of the peace for collection. Warrants were issued by the justices against the Gearhearts, beginning on April 20, 1928, and at times up to and including July 11, 1928. Eleven warrants were delivered to R. H. Bailey, sheriff of Giles county, to be served. Bailey executed the first warrant issued and made return thereon as follows: "Executed on the 20th day of April, 1928, within Giles county, by delivering a copy of the within to N. D. Gearheart in person and N. D. Gearheart accepting service for F. W. Gearheart, F. W. Gearheart being sick in bed and too bad to be served." However, on May 30th, Bailey, sheriff, served a warrant on each of the Gearhearts as shown by this return: "Executed on the 30th day of May, 1928, by delivering a copy of the within to N. D. Gearheart and F. W. Gearheart in person." The other warrants show this return: "Executed within the county of Giles by delivering a copy of the within to N. D. Gearheart in person and N. D. Gearheart accepting service for F. W. Gearheart."

Judgments were obtained on the respective warrants.

At the time the judgments were rendered, F. W. Gearheart was the fee simple owner of valuable real estate situated in Giles county. Subsequent to the rendition of the judgments, F. W. Gearheart & Son made an assignment of all the firm's assets to one Hale, trustee, for the benefit of their creditors. Some time thereafter, F. W. Gearheart departed this life and a chancery suit in the nature of a general creditor's suit was instituted by the Roanoke City Mills and other lien creditors, to subject the lands of F. W. Gearheart to the payment of their debts, the sum realized from the sale of the firm's assets under the assignment being insufficient to discharge the firm's debts. In that suit an account of liens was ordered. The commissioner reported the judgments in favor of Narrows Grocery Company as prior liens upon the real estate of F. W. Gearheart.

Exceptions were filed to the report by the subsequent judgment creditors, on the ground that the judgments of the Narrows Grocery Company were invalid, by reason of the invalid and illegal service of process on F. W. Gearheart. The chancellor sustained the exceptions, and as a result thereof, Narrows Grocery Company lost their claim against F. W. Gearheart & Son, as N. D. Gearheart was insolvent and the estate of F. W. Gearheart was insufficient to discharge the indebtedness of the firm. Thereupon, the plaintiff in error filed its notice of motion for judgment against Bailey and his surety, The Aetna Casualty and Surety Company—surety upon the official bond of Bailey.

There was a trial by a jury, which resulted in a verdict for the defendants.

This writ of error challenges the action of the court in entering judgment upon the verdict of the jury.

 There are four assignments of error, but they are so interrelated as to present in fact but one question for decision, *viz.*, the right of action of plaintiff against Bailey, sheriff, based upon the invalid returns made by him upon the several warrants which the law imposed upon him

the duty of executing in a legal and proper manner, or, in lieu thereof, stating the reason for his failure to execute them in the manner required by the statute.

The office of sheriff is a most important one. In 2 Virginia Law Reg. (N. S.) 669, there is an illuminating treatise dealing with the advent of that functionary known as the sheriff, which occurred when William the Conqueror found himself military master of Britain. In the hands of the sheriff was placed the royal writ, and service by him was essential to jurisdiction by the King's court.

Under the provision of section 110 of the Virginia Constitution, the sheriff becomes a constitutional officer. His duties are defined by statute, and, with certain exceptions, the law imposes upon him the mandatory duty of service of process. For a failure to execute a process issuing from a court of competent jurisdiction without legal excuse, the law imposes penalties.

Section 6020 of the Code, as amended by Acts 1928, ch. 394, places a warrant and notice in the same category, so far as service is concerned, and by section 6041 of the Code, it is provided that a notice may be served by delivering a copy thereof in writing to the party in person; or, if he or she be not found at his or her usual place of abode, by delivering such copy and giving information of its purport to a member of his or her family above the age of sixteen years; or, if neither he, she nor such member of the family be found at the defendant's usual place of abode, then by leaving such copy posted at the front door of said place of abode.

By a further provision of section 2825, it is made the mandatory duty of the sheriff to make a true return upon the process, showing the day and manner of executing the same.

The defense interposed by the defendants was that F. W. Gearheart was too ill to warrant service of process upon him in person. The court permitted Bailey to testify that he derived his information as to the physical

condition of F. W. Gearheart from his son, N. D. Gear-
heart; and that he was warned by the son not to serve
the warrant upon his father.

Over the objection of plaintiff, Dr. Newton, a witness
for the defendants, was permitted to testify that he began
treating F. W. Gearheart in January, 1928, and continued
to visit him periodically until his death on January 4,
1929. During the process of his examination, Dr. New-
ton stated:

"Q. Did you have occasion to attend Mr. F. W. Gear-
heart during his illness in the year 1928?

"A. Yes, sir.

"Q. Over what period of time would you say that was?

"A. I went in on January 16th with Dr. Caudill, seeing
the patients he was going to turn over to me, Mr. Gear-
heart was one of them.

"Q. What was his physical condition, Dr. Newton?

"A. At that time he was partly bedfast, he spent part
of the day in his chair, but to my knowledge, he did not
leave the room from the time I started treating him until
his death on January 4, 1929.

"Q. Doctor, just what was the trouble with him?

"A. First, his age; he was suffering from senility, hyper-
tension, and chronic nephritis, and a chronic prostate
disease. All these were in rather the advanced stage,
and as in the case with most people in that condition, he
showed symptoms of mental deterioration."

It is a pregnant fact that the physician was not asked
what effect the service of a civil warrant would have
had upon the patient. That F. W. Gearheart was not, at
the time the warrants were delivered to Bailey, in such a
serious physical or mental condition as to warrant ap-
prehension that the service of process would prove fatal,
is clearly disclosed by the record.

On August 2, 1928, F. W. Gearheart executed the deed
of assignment heretofore mentioned. On August 10, 1928,
F. W. Gearheart accepted service of a warrant upon
which judgment was obtained. Again, on August 13th,

he accepted service of three other warrants. The fact that F. W. Gearheart did not depart this life until January, 1929, is conclusive that the acts performed by him in August did not hasten his death.

So far as the record shows, Bailey, though a resident of Narrows, did not interview the attending physician relative to the physical condition of F. W. Gearheart. He merely accepted the statement of the son that the father was too ill to be served with process.

As set forth, Code, section 6041, provides for only three modes of service of process upon a defendant, viz., personal service, service by delivering a copy to a member of defendant's family, etc., and by posting a copy of the process. From a humanitarian viewpoint, it seems that the legislature should have provided for a substituted service of process in case of the extreme illness of a defendant. However, that has not been done. It being the province of the legislature to define the method of service of process, and it having done so, this court has no power to add to the statute.

It may be true that if the sheriff had made inquiry of the attending physician, and if advised that the defendant's condition was such as to endanger his life if unduly harassed, and had then made a return based upon such a state of facts after due notice to the plaintiff, he would have been absolved of liability. Until such a state of facts was brought home to the plaintiff, it had the right to rely upon the presumption of law that the officer would perform his duty. *Rowe* v. *Hardy,* 97 Va. 674, 34 S. E. 625, 75 Am. St. Rep. 811.

It is not incumbent upon a litigant to compel the performance of a duty imposed by the State upon an officer, but it is incumbent upon the officer to perform such duty in the mode prescribed by law, or else properly account for his non-performance of duty, if he would avoid liability for his misfeasance.

That Bailey, sheriff, did not perform his duty in the service of the warrants is apparent from his return

showing an acceptance of service by N. D. Gearheart for F. W. Gearheart. That he should have made a true return showing his inability to perform his duty is likewise apparent. Whether or not this latter action would have relieved him of liability it is not necessary to decide.

Our conclusion is that Bailey was derelict in the performance of his duty, whether we view the case from a legal or a humanitarian standpoint.

The judgment will be reversed and annulled, and this court will enter a judgment in favor of the Narrows Grocery Company, Inc., against R. H. Bailey and his surety, The Aetna Casualty and Surety Company, in the sum of $907.08, with interest thereon from the 10th day of December, 1930.

*Reversed.*

EPES, J., dissenting.